Case No. 16-1250 Michael Wilson Petitioner v. Federal Mine Safety and Health Review Commission, N.L. With Overguard for the Petitioner, Ms. Farad for the Respondent, Ms. Browning MSHR Case No. 16-1250 Michael Wilson Petitioner v. Federal Mine Safety and Health Review Commission, N.L. The case involves the review of an agency decision, the Federal Mine Safety and Health Review Commission, in which, in our view, the ALJ improperly granted summary judgment to the Respondent, Jim Browning, and we believe that a re-management commission is required. Because mining is an ultra-hazardous occupation and because miners... Congress wanted miners to be involved in matters that affect their own safety and health at the mine, they created a position called the Representative of Miners, or more commonly referred to as the Miner's Rep. And also, in enacting Section 105c1 of the Mine Act, Congress made it unlawful to discriminate against or interfere with the exercise of any statutory rights of a miner or a Miner's Rep. because that miner or Miner's Rep. was engaged in safety-related activities. Your first point here is that the ALJ misapplied the statute. I think she used the correct standard for interference under the statute. However, she gave four reasons why she thought this case did not rise to the level of interference. Of those four reasons, two of them are flat-out wrong under commission case law, and the other two have no support in the case law and are very dubious. And that's what I'm getting at. Are you suggesting that the ALJ misinterpreted the Mine Act itself in applying commission precedent, etc., or not, to what she found to be the facts of this case? Yes, she did. And she also did not mention the legislative history, which this Court has a long history with in terms of Mine Act cases, talking about how the Mine Act, and 105c specifically, grew out of a series of tragic mine disasters, and that the Act is supposed to be liberally construed to affect or promote safety and health. And what the ALJ did here is she took a very restrictive view or interpretation of what constitutes interference under the Mine Act, which we believe is at odds with the purpose of the Act. So no one, is this correct, that no one challenged the ALJ's reliance on the Secretary's definition of interference? That's correct. It was not challenged below by counsel for Mr. Browning. It has not been challenged on appeal. Right. So when you say the ALJ applied too restrictive a view of interference, what specifically do you mean? Well, this would take us to the four reasons why she said interference didn't, this case didn't rise to the level of interference. So the standard, Judge, is set forth in the Franks and Hoy cases and the McGarry and Bowersox cases that we cited in our briefs, and that's interference occurs when a person's action can reasonably be viewed from the perspective of the member of the protected class and under the totality of the circumstances as tending to interfere with protected rights, which is a pretty liberal, broad standard. And if there is a finding of interference, it can only be overcome if the person justifies that action with the legitimate and substantial reason whose importance outweighs the harm caused to the exercise of protected rights. So I read your argument in part to be that given the facts found, it followed necessarily that there was interference, but some of the facts found were simply erroneous based on the evidence for the ALJ. She had a couple of findings of fact that were not supported by substantial evidence. Yes, she did. She did this on summary judgment. She did. All right, so she shouldn't be finding facts. They're supposed to be taking all the facts from the light most favorable. So that's, are you saying that she found, when you say found facts, you mean she didn't take the facts in the light most favorable to Wilson? Yes, that is true. She recited a couple of facts that were in the light most favorable to Mr. Browning as opposed to Mr. Wilson. Specifically? She found that it was unable to be determined who was the aggressor. In other words, that there was an altercation. Well, in the light most favorable to Mr. Browning or Mr. Wilson, there was no altercation. Mr. Browning just came up, leaned over his chair where he was sitting going through these safety reports, got within 18 inches of him and started screaming at him that, you know, you don't belong here, you need to close that book and go home. He said that several times. You've been dead against the company. You're trying to find a violation so that M should get the citation to the company. You're taking money out of my pocketbook. And he went on and on until finally the superintendent came in the bathhouse, saw what was going on, went over and removed Mr. Browning from the bathhouse and suspended him for the rest of the shift. And these four findings that Judge Miller said that it doesn't rise to the level of interference, like I said, two of them contradict commission case law. The first one is she said that Browning's conduct was, quote, unquote, mitigated slightly because it took place in the bathhouse in front of several witnesses, which that's really difficult to understand because it's much worse to berate somebody and scream at them in front of other minors than it is to do it in private. And the supplemental case that we sent to the court was just issued on March 28th. McNary v. Alcoa World Aluminum held that threatening a minor's rep in front of minors could have a chilling effect on the raising of safety complaints. Any precedence before McNary at the time the ALJ was ruling? Not directly on point. There really are very few cases Judge would have to do with minors' reps, particularly non-employee minors' reps. Now, in that case, Mr. McNary was a minors' rep and he was an employee. The person who threatened him or harassed him was a member of management, unlike Mr. Browning here, but still I think it's instructive. The second finding that's contrary to case law is that the judge said she actually cited the correct law that the issue is not whether the harassment succeeded or failed. She cited that, but then said, nonetheless I find that because Mr. Wilson continued to act as a minors' rep, that that's one of the reasons that it didn't rise to the level of interference. And, again, we're just at the summary judgment stage. We don't know what he would have testified at trial about. Did he skip going to the mine some days because of this harassment? We just know he continued as a minors' rep. The third... Are you saying that's a fact issue or it's also a law issue? Is it right under the law to say you're not interfered with as long as you persevere? That's a legal issue, and the commission has said that's not the test. Whether you persevere is not the test. Right, it's whether a reasonable minor feels deterred. A reasonable minors' rep, in this case, whether or not that would have a tendency to, you know, curtail his exercise of protected rights. The third finding she made was that this was a single act of harassment and saying that it was an isolated incident. But there's no support for this in commission case law. This isn't a hospital work environment case. This isn't a constructive discharge case where courts look at cumulative behavior. Moreover, single acts of discrimination are regularly found to constitute Violations 105C. So, for example, if you have a threat of reprisal, a single threat of reprisal, judges don't say, well, it's only one threat. We're going to give the guy a free pass because he only did it once. It doesn't rise to the level of discrimination. Nor if a written warning is issued to a minor does a judge say, well, it's only written warning, therefore it doesn't rise to the level of discrimination. And just to be clear, again, this sounds like you're identifying legal error in what the NLJ did. You're not disputing that this was a single act, right? No, no. Okay. But to say that that's a reason why it didn't rise to the level of interference we believe is error. And then the final point that she made was that Browning's actions had a less coercive effect on Wilson because Browning was an hourly employee who had no authority over Wilson. He had no economic power over him. Well, that's true. He was an hourly employee. However, there's no case law to support that finding that that's a reason to say interference didn't occur. And the more important point is that management also had no authority over Mr. Browning. They could not discriminate against him. He was not an employee. No, but they did. I mean, it does seem mitigating here that the employer did take action against Mr. Browning. I mean, you would have a stronger case, I take it, if that had not occurred.  I mean, the company suspended him for the rest of the day. But this is a company that we have had this series of litigation against. Mr. Browning's counsel argued in their brief that, you know, the company can self-police itself. There's no need for – it shows that the Mine Act works. This was in their argument that there was not a cause of action. In any event, there's, you know, there's decades of case law about how companies have discriminated against minors and minors perhaps are interfered with their rights. You would agree that it's part of – if you look at the totality of circumstances to ask, would this conduct tend to deter an objective minor's representative, it would be mitigating if everyone around said, hey, Browning, Browning, out of line, and then the employer comes in and says, Browning, totally out of line, you go home. That's a different case from a case where everyone around is cheering, there's a manager standing in the doorway, the manager smiles, no discipline is taken, right? Perhaps you could argue that, Judge. But we don't have that fax in this case where everybody's saying, hey, Browning, you were out of line. There's no evidence of that. We had a previous case which we cited, the Greenwell case, which was another minor and another hourly employee harassed him and threatened him. And the court in that case, the judge in that case, found that Mr. Oglesby was his name, was a person for purposes of 105C interference. The point I'm trying to make is that case settled, but harassment continued with other minors. So the company did not do the right thing in that case. They didn't go to the workforce and say, if anybody harasses or interferes with a minor, you know, you're going to have the wrath of the company down on you because harassment continued. Can I ask you a question? I was going to change subjects a little bit, so if you're on this side, go ahead. What I'm curious about is, under the statute, what remedy is available? As I read the statute, I don't see that there's any legal authority for any of the remedies that Mr. Wilson is seeking against Mr. Browning. And so I'm trying to figure out how. Well, Judge, 105C3, which is the provision that we brought this under after MSHA turned down the case for prosecution, is the relief provision. And it says the commission can order any relief as appropriate, including but not limited to, et cetera. Wait, so first of all, can you help me if you actually use the USC site? And so are you talking about, you're talking about 815? 815C3. Well, so it says that, you know, as appropriate, but then at the end it says, with specificity, violations of paragraph one, which is your interference, are subject to provisions of 818 and 820. And 818, injunctions, only available against an operator or an agent. And you don't allege that he was, you certainly are not, Browning was an operator and there's no allegations that he was an agent. That's correct. So you can't get an injunction. Correct. Which would include a cease and desist order. Well, I think that's. Is that the term of injunction? There are regularly cease and desist orders issued by a commission to an agent. I'm sure they are against operators. Yes. Well, against minors, against anyone. That section 818 is injunction in federal court, I believe. So ALJs do, ALJs, for instance, in the case that's most clearly on point in this case, the Penley decision, in that case the ALJ fined Mr. Creighton, who was a non-management employee who harassed Mr. Penley, who was a non-employee minors rep. The same situation that we have here. The judge fined him, Mr. Creighton, $250. And the secretary had proposed a civil penalty of $500 against Mr. Creighton in that case. So the secretary had turned the case down for prosecution. Actually, Mr. Addington and I had litigated the case. We had won it in front of the judge. And because the secretary had turned it down, the ALJ then goes back to the secretary and says, I found a violation of 105C. You have to propose a civil penalty. They proposed $500 and I think $19,500 against the company. In any event, the judge reduced that to $250. But he did fine Mr. Creighton. No, what I'm trying to figure out is, first of all, you're in federal court now. We have to figure out whether you're aggrieved in a way that this court can remedy you. And civil penalties, the Supreme Court has said, at least when it's a one-off instance, like you can see that this is, there's no prospect of recurrence by Mr. Browning, are not something that are an injury. It is an injury to your client. The Supreme Court has said no on that. There's no basis for injunctive relief because there's no, you said it's a single instance. There's no allegations in your complaint anywhere that they're concerned that Mr. Browning is going to do this again and you haven't sued the company. And so I'm trying to figure out what relief. And attorneys fees don't give you standing. So I'm trying to figure out what relief there is. And you can't get something against the company. The company is not a party. So if I go through your complaint, there's nothing there that is available through judicial review. Well, Judge, what we, well, first of all, that issue hasn't been raised below. And if you look at the judicial review section of the act, that's section 106A, I think it'd probably be 816A1. It says that no issue that has not been urged before the commission shall be considered by the court. Well, look, this goes to whether what your standing is in this court or what your redressability is in this court is a jurisdictional issue that we can be decided. And secondly, this is the type of issue that the commission has no interpretive authority over. The commission is just an adjudicator like a district court. So I don't think that is going to help you, that argument. And he certainly did object below saying, look, I'm a minor. I'm a minor. You can't do this stuff to me. I don't think that went, I do not think that went to the remedy. And I don't think he ever did object below to say there's no remedy against me. What we ask for in our complaint, and this is consistent with case law for decades about what the commission can do, is we ask for a cease and desist order. You cannot interfere with Mr. Wilson when he's performing his duties as a minor rep. Two, we ask that training be provided, that he be required to take training in the statutory rights of minors. And that happens all the time. Okay, one at a time. So cease and desist. There's nothing that's described in the statute as abating behavior or harm. There's nothing to abate if there's no ongoing threat. There's nothing to cease. There's nothing to desist. It was a one-off time instance. We never agreed there was no ongoing, Judge. You just told me it was a single instance. When I asked you that question, you said you agreed this was not an ongoing harm. I think we misunderstood each other, Judge. It was a single instance that brought rise to this case. But can you say that it's incapable of happening again? No, you can't say that. Well, the only thing I can say is whether you've alleged it or shown it. And you haven't alleged it, and you haven't shown it, and you agreed when I asked you that this was a single instance situation. Certainly I don't need to argue with you, Judge. I don't think we can allege in a complaint of discrimination or interference that it's an ongoing violation. It was a single, discrete incident. What I'm saying to you is I don't think we can say that it's never going to happen again. By Mr. Browning? By Mr. Browning, certainly. Can you say that it – do you have any basis for thinking that it will recur? Yes, because Mr. Wilson has been consistently harassed ever since he became a minor suspect. By Mr. Browning? One instance by Mr. Browning. So the difficulty – I mean, I think you cited cases like the Greenwell case and other cases that involve persons like individual employees, but the employer is also in the case. And I think there's a different sensitivity to an employer sending a signal, I count as this or I tolerate this or I do, this kind of interference where it needs to be made clear to the ongoing employees of that employer that their employer understands the labor law. That calculus seems a little different when you're talking about an isolated employee. Do you have any cases, any federal court cases, that involve any remedy against an individual employee violating the MINE Act where the employer is not also a defendant? No, Judge, and I don't believe there are. There's virtually no case law in this area. How about a case where – a federal court case where the employer is in, but where there's a relief that's brought to bear against the employee? I don't know of any federal court cases. There are commission cases, and we cited those in our brief on that long site of all the cases over the years in which actions have been brought against individuals as persons under 105. Just to be clear, that long list, is that a long list of only minors or cases where both the minor and the company were involved? Those are cases where a person was a defendant or a respondent, and in some cases they were management personnel. In some cases they were employees. And we cited a couple of cases. Now, these are just ALJ decisions, Judge. These are not federal court decisions. Where the judge issued a cease and desist order against management agents and all employees. One case was Booger Man Mining that we cited. It's in a footnote on that long string. But there are cases where the commission has issued what you would call injunctive release, cease and desist orders, which is what we sought against Mr. Browning. When we filed this case, what we were seeking was for Mr. Browning to stop harassing Mr. Wilson and also for him to have to take training. And it's very common in 105C cases, for instance, for companies to be ordered, you have to allow MSHA to train all your management personnel in statutory right to mine. Yeah, I think we're talking, I think it's a different issue. I mean, I'll give you if it's a manager, a supervisor, or an agent in any form. If anyone thought management had put Mr. Browning up to this. My question is when you're talking about someone who's just an ordinary miner communicating to his miner representative about his views of his representative's work without any argument that management was behind it or he was their agent and he has no supervisory authority whatsoever. I think there's two problems with that. Number one is he wasn't communicating his views. He was just flat out harassing him. What's the difference between saying you're hurting me, the way you're doing your job is bad, it's hurting me, it's hurting my economics, I don't like the way you're doing it. Stop. People say that to their representatives all the time. He was physically hovering over him, which the judge found was threatening, could have been perceived as intimidating, could have been perceived as threatening. That's a quote from the judge. We think any time an ALJ says that someone's behavior could be perceived as threatening, that's interference. And what we're afraid of is that if miners get a free pass, what's to stop any miner? Miners reps are not popular at non-union mines in America. There's very few at non-union mines. This was a non-union mine. Mr. Wilson was not popular because he was a miners rep traveling with inspectors on a regular basis. If we say it's okay, you get a free bite of the apple because you only did it once, you can harass someone, you can scream at them, you can try to prevent them from exercising their rights. Tell them, leave the mine properly going. Well, no one is talking about actually preventing him. We're talking here about people expressing their opinions to the miners representative in a raised voice and to their face. That's all. If he actually physically did something? He was within 18 inches of us. I understand. He was in his face. We would have a different case if Mr. Browning had stood at the mine with a placard and said we don't want Flip Wilson as a miners rep. That's not interference. If he had sent him a letter, said Flip, we don't want you as our miners rep, we have other guys here, you're hurting the company. That's pure speech. That's First Amendment. That's not interference. Even if he had seen him at Walmart and said, Flip, I really got a problem with you being a miners rep. We don't want you. We would not have filed a case. But Mr. Wilson was in the midst of his duties. He was reading the pre-shift, on-shift reports, looking for violations so that he can inform other miners of safety hazards underground. When Mr. Browning came up and started harassing him, he did not speak about mine safety and health. In fact, he's not interested in mine safety and health. He was interested in thinking that I could lose money if you point out to MSHA violations that result in citations which result in fines. He's interested in himself. He had not signed for Mr. Wilson to be his miners rep.  Well, it doesn't matter, right? Well, you said his miners rep. Was the representative of him? Is he only representing the two miners that voted for him? He is. Does he represent all the miners? Only the two miners. Okay. If many had a miners rep who's really bad at his job, unlike Mr. Wilson. We're out of Mr. Wilson's area now. Really bad. And there's some real problems at a hypothetical mine. And Mr. Browning and Mr. X walks in and sees this really crappy miners representative sitting there looking at leaf slips, something that isn't going to promote safety. Doing a really bad job. And runs over and gets within 18 inches of him and says, What are you doing? Stop doing that. You shouldn't be doing that. You're a terrible miners representative. There's real safety problems. If you would go look at these other books. You're doing a horrible job. You're not protecting our safety. You're a ruse. You're a cover here. You're endangering us by pretending to go through the forms to look at these things. Is that the interference? Well, first of all, a miner's rep does not have a right to look at leaf slips. Okay. Looking at something that doesn't document the safety concerns that everybody knows are going on. They don't have the right to look at anything other than safety records that are required by him. They're looking at old safety records. There's a real problem that's emerged in the last month. Everybody at the mine knows it. I don't want to quibble with the facts here. My hypothetical is you've got a lousy miner rep who's looking at the wrong stuff, not looking at the real problems, the evidence of real problems there. And people are scared. And someone gets within 18 inches of his face and yells at him and says, Stop doing that. You're doing a terrible job. There's real problems you need to deal with. Is that interference? That's a close call. No, no. 18 inches from his face, yelling at him while he's doing stuff as a miner representative, do a terrible job and stop doing that. It's no different at all. Well, yes, it is. Because, first of all, Mr. Wilson was looking at safety records. Mr. Browning did not say any things that you put in your hypothetical. It was just stop, put the books, close them down, go to your house, you're taking money out of my pocket, you're trying to hurt the company. He didn't say anything about safety or health. So interference depends on what words? So if Mr. Browning had done the exact same and said, I don't think you're promoting my safety, I think you're hurting me, it wouldn't be interference. Go home. I don't think you're promoting my safety. You're hurting my safety. That would be okay? I'm not going to concede that that would be okay, no. I really do think it's a hard call. I do think we have to look at this is a summary judgment case. The facts that are before us and what did happen in this case. And the point is that Mr. Browning was not interested in my safety and health. He did not raise it. The judge found that this conversation lasted, or not conversation, this yelling, berating lasted for a few minutes. Mr. Browning had plenty of time during that time to talk about safety and health. But he didn't. It was all you just need to go, you need to go home, get out of here. Now, when the MSHA Special Investigator, who was investigating the case, interviewed Mr. Browning, he asked him, did you say you're taking money out of my pocket? He said, yes, I did. Well, what did you mean by it? And he said, if Flip finds a violation, the company has issued a citation, that could come out of my coal royalty, or potentially the mine could shut down for a couple days and I might lose money. Well, that was his motivation. My financial interest might be affected by you doing something that Congress told you you have the right to do. And we can't lose sight of the fact of why miners' wrecks are created in the first place. Mr. Wilson, through his job, he could find something, talk to an inspector and say, here's the problem, this could cause an explosion. 30 people could die in an explosion or more. Just like we had the Upper Big Branch disaster a few years ago in West Virginia. Twenty-nine miners died. They had no miners' wrecks at that mine. There's a purpose for miners' wrecks. It's to prevent disasters, to prevent injuries, disabling injuries, and that's what Mr. Wilson was doing. Sorry, finish your sentence. And Mr. Browning's concern was not that he was doing a poor job, as you allege, in your hypothetical, it's more that he's doing a good job. He's saying your job isn't to point out violations to MSHA. Well, yes, that's exactly his job, what he's supposed to be doing. He travels with the mine inspector and says, by the way, you missed these bolts over here that are hanging down. That's a violation. It could cause a roof fall, needs to be corrected. That's the miners' wrecks job, and that's what Mr. Browning didn't want. All right. Let us hear counsel for respondent Mr. Browning, and then we'll give you a couple of minutes on rebuttal. Thank you very much. Your Honor, my name is Erica Hashimoto, and I'm the director of the Georgetown Appellate Litigation Clinic. With the court's permission, third-year law student Donna Hodduk will be arguing for Mr. Browning, and Mr. Browning gives his consent to this. Thank you. All right. Welcome, counsel. Good morning, Your Honors, and may it please the court. Viewing the facts in the light most favorable to Wilson, in a single isolated incident, Browning approached Wilson and angrily told him to go home multiple times. Within minutes, Browning was suspended, his pay was dropped, and he was sent home. But there has never been any incident, any other incident between Browning and Wilson and Browning and any other miners' representative. The issue in this case, then, is whether this single incident constituted interference. The ALJ properly found that it did not, and held that such conduct was beyond the scope of the Mine Act. The Mine Act was intended to ensure that mine operators would not be using their authority to interfere with miners' representative's safety inspection. Congress never intended nor envisioned that a single conversation of poorly chosen words would subject a miner to two years of litigation and be hailed into federal court. Well, it does say any person. I'm sorry. It does say any person. Elsewhere, when Congress just wants mine operators, it can say that, but it says any person. Yes, Your Honor. And there is a chance that a mine representative, an alleyway miner, could be guilty or liable of conduct that interferes. But not in this case, not in a case where it's a single incident and it's a few one-off comments that, yes, they were said in anger. But that conduct does not rise to the level of interference. I'm trying to sort out here. Is it the words that make it not interference, or is it that you keep talking about a single event? It's a number of factors. Part of it being that, yes, it was a single event. Given the statutory language, this has to be an ongoing problem. That is correct, Your Honor. But the test is if there's a reasonable tendency to interfere. And certainly a single incident would weigh against a finding of a reasonable tendency to interfere. It's just one time one man was venting, spewing words angrily, but given everything else that was going on in that situation, it was just one man. It was something that lasted, well, four minutes. It could be a 6'5", 300-pound guy going up to Mr. Wilson's old tire. I think he has black lung disease. Imagine he's sitting there with an oxygen machine on. And this big guy comes up and starts screaming at him, stop what you're doing. At least while he's being yelled at, Mr. Wilson stops what he's doing. He stops looking at the box. Yes, Your Honor, although there is interference. How is that just not the most plain meaning of interference? It could be. It could potentially. But how is that not interference? That could be. How is that the plain meaning of interference? Because you still have to look at everything that was going on in that circumstance, and certainly someone, regardless of their size, although there's nothing in the record indicating it, but certainly someone still has a right to go up and communicate to the minor's representative their displeasure. It's whether the comments are of such a sufficiently serious nature that they would disincentivize someone from doing their job. So you need physical contact? I believe physical obstruction would rise to the level of interference. When words can hurt and interfere? With words in a single incident, you need something more serious. It went on several minutes. It was in front of other minors. Brie says, you let Mr. Browning get away with this, and the rest of the minors are free to do the same thing. And I think the opposing counsel neglects the supervisor's intervention. After several minutes. This was actually another witness who said to the supervisor, hey, if this is getting out of hand, you better get in there. And I think this cuts in our favor because other minors that were present were not inclined to follow Browning's example. And here was a minor who was yelling, probably shouldn't be doing that. But there's really no fear that Browning would, in fact, be doing this in the future to other minors' representatives. And no reasonable minors' representative would fear Browning when they know that there are other witnesses that called him out on his behavior and that the supervisor immediately came in, suspended him, that was done. In fact, the minors' representatives would know that they are protected. Browning's conduct is no longer an issue. Go ahead. Are you pressing your position that there's no claim where the interference is by a non-supervisory employee? It seems like that's gotten way too broad. For an hourly minor, we don't believe that there is a cause of action. But the court need not reach that decision today because it simply does not rise to the level of interference. And so the court does not have to determine that. But even if the court were to find that he is subject to a cause of action, it's still unclear what the remedies would be. Why couldn't it just be some monetary liability against the individual? I mean, if you can imagine a line in which the atmosphere is toxic and it has nothing to do with the employer, maybe they're, you know, reading on the Internet or, you know, somehow getting the – and every day it's a different minor. But whenever the minors' representative comes, they get in his face and they just speech, no physical, you know, and yell at him and tell him to go home. I mean, I know I'm not a minor's representative, but after several days, you would not want to work there. You would hesitate. Or an objective person might reasonably be allowed to hesitate. Isn't there a situation in which those employees should be held liable and which the minor contemplates their liability? I think in a situation like that where it's multiple employees and it's happening repeatedly, there's a chance that those employees have become agents of the mine operator. I'm actually positing in my hypothetical that they're not, but that the statutory language appears to encompass situations in which they aren't in person. And I don't think – I guess I'm just trying to understand why you would go there, given that that's a very hard position. If we were to rule against you on that, do you lose? No, Your Honor. I believe certainly that we – that this conduct does not tend towards interference. And then if the court finds that it does, it has to deal with the First Amendment argument. Let's be clear, Dawn. It's not what you believe or what we believe. It's whether or not the ALJ's findings in the summary judgment proceeding were proper. And the ALJ said, talking about Mr. Wilson, quote, he ultimately – oh, Mr. Browning, he ultimately expressed that opinion in an agitated manner that Wilson may have perceived as threatening. That's a finding by the ALJ. And then the ALJ goes on and says, however, applying the factors from multi-ad and the conditions of interference cases, I do not find interference. And then she goes on and she misapplies one factor, namely what happened afterwards, because that's not the test that applies here, looking at the NLRB cases under the NLRA interference standard that is being applied here. And the ALJ basically said, you know, the fact that Wilson may have perceived this to be interference, and he stopped his work, and the man was in his face for several minutes. Well, he went on doing his job, so there's no interference. Is that a proper legal analysis, given the Mine Act and one's purposes? First, Your Honor, the ALJ admitted that, yes, he went on to do his – Wilson went on to do his job, but she did indicate that that was not the dispositive factor. No, but it was one of the factors that she identified, that the ALJ identified, as causing her to find no interference here, even though the ALJ had found that Wilson could reasonably view this as interference. But she says, look at the totality. And I believe that the totality inquiry is the proper legal one. It may be, but one of the factors was error. So what do you do with that? If a judge, a district court, says, I find against you for the following four reasons, and one of those is wrong, and the judge hasn't indicated that's an independent ground, then what is the court supposed to do? The whole house of cards tumble? No, Your Honor. Why not? Because I think the other factors would still support her reasoning, but that's not what she said. She said, look at these four factors, taking them together. I find no interference. Yes, Your Honor, and if I could just briefly address one of the factors. But do you get the thrust of my question? In other words, if a judge rules against you and says, I'm giving four reasons, and each is critical to my decision, and we find that one of them is legal error, don't we have to send it back? No, Your Honor. You don't? No. On summary judgment? On summary decision. Where you have to show that you were entitled to judgment as a matter of law,  Yes, Your Honor, because if the ALJ may have misapplied one of the factors, if the other factors would still indicate that there is no reasonable interference, then I don't believe this court would have to remand. How would we know? The judge said all four of these are what made me decide what I decided. Can we just guess? No, this court has the ability to make that determination as well. Surely this court could remand and we could find ourselves in the same position because the ALJ will say it still does not rise to the level of interference, looking at all these other factors that are with you. So our review is de novo? It's not clear what the standard of review is, Your Honor. For questions of interference, it's likely substantial evidence, but because this is on summary decision, there's no case law clearly indicating what the standard of review is. Well, I'm just trying to follow your analysis. If this is on summary judgment, then our review is de novo. And then we look for clear error in finding the facts and de novo on the law. Yes, Your Honor, but that also allows you to look at the record and determine whether this conduct, given all the circumstances, given the fact that it was just a few minutes, and that the statements, while they may have been perceived as threatening, first, it's not clear that the ALJ found that a reasonable minors representative would have perceived them as threatening. And second, a threat, an implied threat, may not necessarily reach interference. How a reasonable minor would have responded, is that a legal question? Could we also decide de novo? I believe so, Your Honor. And I want to say that there was no indication that this was a threat. Wilson never even alleged he felt threatened. This was the ALJ. The ALJ found, quote, Browning took an aggressive tone with Wilson that could have been interpreted as intimidating. And then she goes on to say, but he said it in front of several witnesses, so that's mitigating. All right. And I think the may have is indicative of the fact that if it's a single incident, it has to be something more than this might have been threatening. It could have been potentially perceived. Wilson alleged in his complaint that he had been harassed. But simply saying that I'm harassed does not make it so. And he is not harassed. Would he have not refused to harass somebody or interfering with what they're doing? Harassment may, but not necessarily. Okay. So taking the facts and all reasonable inferences that can be drawn from the allegations and the like, most favorable to Mr. Wilson, can we say that they and I was harassed? And then the factual description that we're given as a matter of law is not interference? In this case, no. Harassment can, but according to these facts, where it's one incident, just a few minutes, and it's a man angrily. What if we added to the complaint that the minor's rep has black lung disease, is on an oxygen machine, has a heart condition? And if we add the facts that the minor, 6'5", 300 pounds, screaming at the top of his lungs for three minutes? I don't believe that would constitute interference. And it's based on the law. Those subjective qualities don't necessarily make this reasonably tend towards interference. But it will actually have to interfere. It just has to tend to interfere. But minor's representatives are used to engaging with minors, and they're used to hearing perhaps not the most civil dialogue. The Mines Act was never intended to impose a code of civility. How do we know that, what you just described? Because the conduct still has to be connected to interference. Well, it interfered with him continuing to look at the book that he had a right to look at. And he never took, Browning never took the books away from Wilson. It was Wilson that made the choice to engage with Browning. Well, this guy is in his space screaming at him for several minutes. And nobody does anything. Well, someone did do something, and that's after several minutes. Yes, Your Honor. Everyone else stood around for three. You see this all the time, violence going on. There's no violence here, but it's actually horrible when everyone just stands around and watches you. That sends a message, too. They don't have to applaud. They don't have to cheer. They're all just standing there and letting it happen. I see what you're talking about. I think if Browning were in a position of authority, if Browning had any authority over those minors, that they would be inclined to follow him. No, we know that's not the case. What I want to understand is, in your opinion, Ben, the Secretary's definition of interference does not reach conduct that a minor's rep could view as threatening and intimidating. Absent something else. Is that right? In other words, I'm torn in two ways. One, I'll speak for myself. I have no idea how a minor's rep operates in this mind at that time. Everybody may love him. Everybody may hate him. I don't know. But presumably the administrative law judge has some expertise in this area, since they're dealing with these cases all the time. But what I'm told in this case, it really doesn't matter if the minor's rep feels intimidated. And I thought, well, management stepped in. Man lost some pay. That's enough. That's not what the ALJ is saying here. As I read it, she's interpreting the Secretary's definition of interference to have a fairly high threshold. And Browning's conduct is basically okay. It's not that the conduct is okay. It's just that it's beyond the scope of the Mine Act. And we're not asking the court to condone Browning's actions. No. What the ALJ found was it's beyond the scope of the Secretary's definition of interference under the statute. Yes, Your Honor. And I think it's because of the other factors. Simply because something may be perceived as intimidating does not rise to the threshold of interference. And we can look at even the case that opposing counsel cited too, Penley, one of the very few cases where there was an action against a minor. And in that case, it was ten years, ten years of an ongoing back and forth between the minor's representative and the minor. There were assault charges that were filed. Well, I understand there can be egregious cases. But I'm just trying to understand. The ALJ has lowered or raised the threshold here beyond what might be viewed as the plain words of the Secretary's definition. I don't believe she's raised the threshold. But she is saying that in a situation where it is one single actor in one single incident, the conduct has to be, and it's someone who has no authority, the conduct has to be something more than just angry words. So what more? Two of the factors we sort of dispose of. One is just wrong as a matter of law. Two, it really doesn't make any sense that you can do this for several minutes in front of other minors, and somehow that's mitigating. Sorry, Your Honor, can I just clarify? What is the factor that you say is wrong as a matter of law? Well, the commission says they're following the NLRA's interference test, as interpreted by the NLRB. And the NLRB has said you can't look at what happens after the incident is issued, namely whether the minor, at least that can't be dispositive, whether the minor's rep continues to do his job or not. Yes, but the commission has said it can be considered, and I believe it has said that in the NLRB context. So, yes, it can't be dispositive, and I don't think she, and she recognized that herself. But I think you have to view interference just a little bit more narrowly or requiring something more than just angry words because that's what the First Amendment requires. Well, we have more than angry words, according to the ALJ. We have a man who had to stop what he was doing when he's there to protect the minor's health and safety. And all your client is concerned about is his own pocketbook. And this is where you need to look at the context in its entirety. Mr. Wilson had shown up after he had retired on a Saturday, and he absolutely had a right to be there. No one is disputing that. But Mr. Browning was seeing his retired co-worker there on a day where he was not accustomed to seeing minor's representatives. In fact, the first time Mr. Wilson had shown up to the mine after his retirement, the mine operators were wondering what he was doing there. At least they knew the law and they knew better. They knew to call Mr. Wilson's attorney. But the hourly minor didn't know that, so he saw his co-worker. He went up to him and said, what are you doing here? We have other representatives now. Go home. Certainly not polite, but I think even viewing the facts in the light that's favorable to Wilson, you still have to take this into account. This was not disputed at all. And so there was a misunderstanding of sorts. Well, at least the employer thought it was bad enough to dock its pay. Well, as the closing counsel himself noted, our strong pull had been the subject of quite a bit of litigation. So if anything, this was a preemptive act. We're taking this seriously. Go home. And it was a way to protect them, the operators as well. But certainly the mine, an hourly minor who does not know the law, should be subject to some leeway. And this is what the court had seen even in ---- Would you agree that if management had put him up to this, the exact same conduct would be interference? If management had put him up to this? If the supervisor had said, give me a pain in the ---- You really should let him know what you think. It could. I think the inquiry changes a bit because there's a question as to whether you're looking at what Mr. Browning did and everything else that the mine operators had been doing. I'm telling you one thing. The supervisor goes to Browning right before he goes and goes, I forget what they call it, the room, break room or whatever. Bathhouse. Bathhouse. Bathhouse. Mr. Wilson's in there. He's going to try and shut down the mine again. He's always doing this, causing you guys to lose money. I know you've been really hurting financially. You should really let him know what you think. I don't think so. You don't think what? I don't think it would be that Browning would be liable for interference. I think the mine operator would, but not Browning. No person shall interfere. Interference has a different meaning depending on who the person is? It can. If there is someone in authority saying these words, they could certainly be more coercive. I need to say that if a reasonable minor supervisor has no authority over Mr. Wilson, he's retired. Even so, if it's someone who has authority to kick him off the premises, saying go home if you actually are controlling the mine, it certainly has a far greater impact than a minor who has no authority to tell you to do anything. And Mr. Wilson knows that. And he turned around and said, no, I can be here. It's my right to be here. And that's where the confusion was. And Browning said, we have other miners representative. But the inquiry also varied because of the fact that the minor is not expected to know the law. And in First Amendment cases under the NLRB context where employers were being sued for unfair labor practices or because individuals perceived that employers were threatening against unionization, this court had said you need something more explicit. You need to have a threat of reprisal. Employers still retained some ability to express their opinion. Here there was no threat of reprisal. And for an hourly minor who does not know the law, who does not have an adequate guide for his behavior, as the court said in Gisselpacking, he has no control over the relationship, then he should be given leeway in a single incident where the words were angry and rude, yes, but do not rise to the level of interference. So here's what the ALJ says. Considering all of these factors together, I conclude Browning's actions in my constituency. Here is an exercise from mine. A single altercation between a minor and a representative with no discernible effect on protective activity at the mine does not rise to the level of interference recognized actionable in past commissioning cases. It's simply beyond the scope of 105C. So I'm just pressing you on my point. The question is, isn't that legally the wrong standard that we don't look at whether it's a discernible effect? We look at whether, objectively, a reasonable minor's representative would have had a tendency to be deterred in exercising his rights. Yes, Your Honor, and this is her summing up her analysis. So if that was the only thing she said, then that would be questionable. But this court can still consider whether there was a discernible effect, and that is a factor, not the entire inquiry. And if this court finds that this single incident, which did not have an effect on Wilson and would not tend to have an effect on any other minor's representative because of how Browning was instantly shut down, does she ever apply the right standard? So you say it's in summing up, but I think the difficulty that we're having is that on page J of 79, she also says in going through this evidence step-by-step, she says it does not appear to have had an actual effect on Wilson. I think one of the concerns we have is, again, that doesn't seem to be the correct test. And so is there a place where she says, you know, and he may well be a reasonable minor, and given that the analysis, the legal test is would, objectively speaking, would this be likely or have a tendency to deter the reasonable minor's rep, you know, we just don't have that articulation for standard. She seems to be looking at him as an actual individual rather than looking at a more objective, reasonable test. I believe in can we affirm if we think that there is that error, and if it is, can we nonetheless affirm? If that were the only factor, then it could be error, and yes, you could nonetheless affirm. But she does note specifically that she declines to dismiss that case on that basis alone, and she finds that that is persuasive evidence that a reasonable minor would not have been dissuaded from exercising his rights in this situation. And that's the bottom of page 79 to 80. But all the other factors, looking at the setting, the location where Mr. Browning had a right to be, it was a public bathhouse. And yes, he was standing over Mr. Wilson because Mr. Wilson was sitting. He went to go see what Wilson was looking at. What language are you looking at on page 79? Just the bottom. How many lines from the bottom? Just the end of the paragraph, wrapping over onto 80, it's about the fourth or fifth line. That's what you're looking at, just before the first page. The fact that Wilson's right to continue to serve can be persuasive evidence that a reasonable minor would not have been dissuaded. But she specifies right before that she declines to dismiss the case on that basis alone. So it's an indication to her, but she does not hang everything on that. She does look at the duration. She does look at the fact that this was just a one-off situation. And she looks at the fact that the words, while they may be perceived as threatening, are angry and she doesn't explicitly say it, but they are protected. It's a minor communicating to a minor's representative. Also, even if we didn't accept your argument, we wouldn't be deciding anything other than that summary judgment was inappropriate. We wouldn't get to the ultimate merit of the case, would we? It would dispose of Wilson's case at that point. It would go back to the ALJ, wouldn't it? Well, the ALJ dismissed the complaint. If we were to agree with Wilson's appeal, wouldn't it just go back to the ALJ for further proceeding? Yes, but it's unclear what that proceeding would look like. That's a different issue, but it would go back to the ALJ. Yeah, I guess I'm a little confused. Because the ALJ didn't, in fact, take the facts in the light that's favorable, if you're sending it back, then we'd have to actually introduce Browning's facts and she'd take into account that. But you would be finding that that incident could constitute interference. And if the court does well... But, I mean, we're talking about summary disposition here. That's always the address, isn't that correct? I wouldn't decide the facts of this case, whether or not Wilson was actually interfered with. Necessarily, would we? You could be deciding that if Wilson's facts were, as he alleged, that he does have a section 105c1 claim of interference. Well, I'm thinking case summary judgment. All right, it comes up here, and if we reverse, it goes back for trial. But we don't say anything about what the outcome of the trial might be. Right, we don't know. It could be fact-finding about exactly what happened. Fact-finding could completely favor Browning or it could favor Wilson. It could. And what we're arguing is if there's any more fact-finding, even if there's more fact-finding, it can't go any more in Wilson's favor. That is what we are saying. There are no more facts that could further push this to interference. The ALJ did take into account and almost bent over backwards drawing inferences when she said, this may have been perceived as intimidating and threatening because Wilson never even alleged feeling intimidated or threatening. All right, so counsel, we give you a lot of extra time. Thank you for your assistance. Thank you. All right, counsel petitioner, give me a couple of minutes. I appreciate having a couple extra minutes here. Just four quick points I want to make. First is that we have to remember Mr. Wilson was essentially a volunteer. He wasn't getting paid for being a minors rep, unlike an employee minors rep. So it would be much more likely, I think it's a reasonable assumption, that someone who is doing this with no compensation is going to be more likely to forfeit his rights and just say, it's not worth it. Why should I go out to the mine and fight for mine safety when I'm being harassed? The second point I want to make is that what actually happened. Do you have any law at all on that? Any administrative or judicial decision or statutory or regulatory? No, Judge, there really aren't any cases on non-employee minors reps, other than the Penley case. And with all due respect to Ms. Barak, the facts she cited in Penley really aren't accurate. It was, yes, they did have some history, Penley and Creighton. However, the two incidents in which Judge Andrews found there was interference were both less time and duration than this incident and did not involve screaming and yelling. What it involved is an hourly employee going over to a minor's rep, Penley, who was standing with an inspector getting ready to go underground and standing near to him in what he perceived to be a threatening manner. The judge said both of those incidents, one was 15 to 40 seconds, the other was under 60 seconds. In both instances, that constitutes interference. Your complaint doesn't say screaming and yelling. It says told. The judge found. You can't find facts on summary judgment. Just take the complaint in the light and most favorable to your client. It says told, told, told. What do we do with that? And they just pointed out he doesn't allege that he was threatened or intimidated. It's in his affidavit, Judge, that was submitted to Judge Miller on a motion for summary judgment. Okay, but that then sounds like, okay. It's in his affidavit. The judge, and by the way, the judge allowed very little discovery in this case. The only deposition she allowed us to take was Mr. Browning. So we were not allowed to do basically any other discovery in the case. I don't know how these agency procedures work. Did you ask for more discovery? Ordinarily we do interrogatories, requests for documents. We do depositions of every potential witness. She would not allow us to depose the other witnesses that Mr. Browning had identified as having witnessed the event. We were allowed to talk to one guy on the telephone. But the other issue here is that, or the other fact is we don't know how long this harassment would have lasted had, number one, the superintendent not come into that house. And it was actually Mr. Greenwell, and I think his affidavit is adjoined to Appendix 41-42. He's the one, and he had been harassed earlier. He's the Greenwell in the case that we cited who Oglesby had harassed, and in which case Judge Miller had found that Oglesby, a non-management employee, was a person, and the Secretary of Labor agreed with that interpretation. It was Greenwell in this case who looked at the superintendent, and I'm paraphrasing now, but said, you better get over and do something about that because he saw Browning harassing Wilson. Where again in his declaration does he say there was screaming, yelling, and he was intimidating? Well, I don't think that's in there, Judge. This is Mr., I mean, Mr. Greenwell can't... No, I'm talking about Mr. Wilson. I've got, he uses loud voice. Something says screaming, yelling, and loud voice, Browning accused, and it says Browning was trying to intimidate me, which is not the same thing as saying I was intimidated. I'm just trying to make sure that when we analyze the ALJ decision here, we're not... Right. ...reading things into this. When she takes the facts, she has to take the allegations in the light most favorable. That doesn't mean she has to add things. I believe also if this case goes to trial, Judge, if you all reverse the judge and send it back and say, you know, you employed the improper standard, and we believe she employed two improper standards, but I think that the testimony will be Mr. Wilson is going to say I thought Browning was going to punch me. He was sitting down, Browning hovered over him, and now this isn't... Just curious he never said that in his affidavit. Right. And that's correct, and it's not the judge's decision, but that's the way he felt, and he stood up and turned around and looked at Mr. Browning for that reason, because someone comes up behind you and starts yelling at you. I guess that's your natural tendency, stood up and turned around. We didn't get into any of that in discovery. Mr. Wilson's deposition was not taken. Like I said, we were only allowed to take Browning. And Mr. Browning denied everything. We had his interview with MSHA that had been taped and recorded. I asked him verbatim from his interview, did you not say you're taking money out of my pocket? And he denied everything when we took his deposition. What I'm telling you is he was dishonest about every aspect of what had happened during this encounter. Probably eight or ten different things I asked him, didn't you do this or didn't you say that? He denied all of it or said I can't remember. But, of course, we're hoping we can go to trial and try to prove our case. So I've got two points. What's three and four? You said you had four points. Oh, I think I had three of them. The last point, Judge, was just if we had had evidence that Armstrong Cole had put Mr. Browning up to this or had encouraged him, we would have named Armstrong Cole as a respondent as well. We actually told the Secretary of Labor we don't want you to name Armstrong Cole because we have no proof that they did it. And this is part of our concern, if the judge's decision would be allowed to stand, and particularly if it says that a non-management, if you ruled that a non-management person cannot be sued under 105C, or if the judge's decision is allowed to stand, i.e. get a free bite at the apple, it only happened once, what is going to stop coal companies or any mining companies from encouraging hourly employees to do their bidding for them? You go and harass him. You have the freedom to do that. That's another case. And it could be Judge Appleworth. No, I understand, but you just have to deal with what's before us. That's correct. Thank you. We will take the case. Case under review.
judges: Rogers, Millett, Pillard